IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No. 15-cv-01023-REB-KMT
(Consolidated with Civil Action Nos. 15-cv-01024-REB-KMT and 15-cv-01025-REB-KMT)

KW-2, LLC,

      Plaintiff,

v.

ASUS COMPUTER INTERNATIONAL, et al.

      Defendants.

---

## ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF STANDING

---

**Blackburn, J.**

      The matters before me are (1) **Defendant Asus Computer International and Asustek Computer, Inc.'s Motion To Dismiss for Lack of Standing** [#32],[1] filed August 11, 2015;[2] and (2) **Defendant Dell Inc.'s Motion To Dismiss for Lack of Standing** [#31], filed July 31, 2015.[3] I grant the motions and dismiss these actions for lack of federal subject matter jurisdiction.

---

[1] "[#32]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] With the consent of the magistrate judge, the prior **Order of Reference** [#34], filed August 12, 2015, of this motion is withdrawn.

[3] Dell's motion was filed in Civil Action No. 15-cv-01025-REB-KMT prior to the entry of my **Order Granting Motion To Consolidate** [#42], filed August 17, 2015. The docket number thus reflects its place on the docket in that previously separate case.

## I.  JURISDICTION

Putatively, I have jurisdiction of this matter under 28 U.S.C. §§ 1331 (federal question) and 1338 (patent issues).

## II.  STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and thus may adjudicate only claims the Constitution or Congress gives them jurisdiction to determine.  ***Morris v. City of Hobart***, 39 F.3d 1105, 1110 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1960 (1995); ***Fritz v. Colorado***, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002).  Concomitantly, the class of persons authorized to bring suit is limited by constitutional and prudential principles of standing.  ***See Warth v. Seldin***, 422 U.S. 490, 500-01, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).   "[S]tanding is a threshold issue in every case[.]"  ***Board of County Commisioners of Sweetwater County v. Geringer***, 297 F.3d 1108, 1111 (10th Cir. 2002) (citation and internal quotation marks omitted).  If a putative plaintiff lacks standing, the court is without subject matter jurisdiction to consider its claims. ***See, e.g.***, ***Warth***, 95 S.Ct. at 2206-07; ***Schlesinger v. Reservists Committee to Stop the War***, 418 U.S. 208, 215, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may consist of either a facial attack or a factual attack on the complaint.  ***Holt v. United States***, 46 F.3d 1000, 1002 (10th Cir. 1995).  Defendants' motions present factual attacks on plaintiff's assertion of standing.  Accordingly, I may consider the exhibits presented by the parties to resolve disputed jurisdictional facts.  ***Wheeler v. Hurdman***, 825 F.2d 257, 259 n.5 (10th Cir.), ***cert. denied***, 108 S.Ct. 503 (1987).  Once its standing has been challenged, plaintiff bears burden to demonstrate that it has standing to bring

suit. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119

L.Ed.2d 351 (1992).

## III.  ANALYSIS

This is a suit alleging infringement of United States Patent No. 6,027,835 (the

"'835 patent"), which claims rights in a "Cell Electrode Sheet with Displaced Electrode

Depolarizing Mixes."  As plaintiff in each of the three consolidated cases herein, KW-2,

LLC, claims to be the "exclusive licensee" of the '835 patent under the terms of a

February 2015, "Exclusive Patent License Agreement" (the "License Agreement")

between itself and Ryujin Patent & Licensing Ltd. ("Ryujin"), a Japanese corporation

designated therein as the "Owner" of the '835 patent.  Defendants move to dismiss on

the ground that plaintiff lacks standing to sue to enforce the patent.

Although standing is circumscribed by both constitutional and prudential

limitations, ***see Warth***, 95 S.Ct. at 2205; ***Geringer***, 297 F.3d at 1111, defendants'

arguments implicate only prudential standing.[4]  Prudential standing is comprised of "a

judicially-created set of principles that, like constitutional standing, place[] 'limits on the

class of persons who may invoke the courts' decisional and remedial powers,'" even

when constitutional standing requirements are satisfied.  ***Geringer***, 297 F.3d at 1112

(quoting ***Warth***, 95 S.Ct. at 2205).  Among the prudential standing doctrines is the

requirement that a plaintiff must assert its "own rights, rather than those belonging to

third parties."  ***Sac & Fox Nation of Missouri v. Pierce***, 213 F.3d 566, 573 (10th Cir.

2000), ***cert. denied***, 121 S.Ct. 1078 (2001).  It is that principle which forms the basis of

the instant motions.

---

[4] I therefore do not consider plaintiff's arguments regarding whether it satisfies the justiciability
requirements of constitutional standing.  ***See Morgan v. McCotter***, 365 F.3d 882, 887-88 (10th Cir. 2004)
(setting forth elements of constitutional standing).

The Patent Act contemplates that a "patentee" may bring suit "for infringement of *his* patent." 35 U.S.C. § 281 (emphasis added). Generally, therefore, only a party who holds legal title to the patent has standing to sue to enforce it. ***Propat International Corp. v. Rpost, Inc.***, 473 F.3d 1187, 1189 (Fed. Cir. 2007); ***Rite-Hite Corp. v. Kelley Co.***, 56 F.3d 1538, 1551 (Fed. Cir.) (en banc), ***cert. denied***, 116 S.Ct. 184 (1995). This category includes a "person to whom the patent was issued" as well as any "successors in title." 35 U.S.C. § 100(d). Thus, the assignment of legal title in a patent gives standing to the assignee to bring suit on the patent:

> [A] patent is, in effect, a bundle of rights which may be
> divided and assigned, or retained in whole or part. . . . When
> a sufficiently large portion of this bundle of rights is held by
> one individual, we refer to that individual as the owner of the
> patent, and that individual is permitted to sue for
> infringement in his own name.

***Alfred E. Mann Foundation For Scientific Research v. Cochlear Corp.***, 604 F.3d 1354, 1360 (Fed. Cir. 2010). ***See also Enzo APA & Son, Inc. v. Geapag A.G.***, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (assignment may take "the form of the entire patent, an undivided part or share of the entire patent, or all rights under the patent in a specified geographical region of the United States"). Conversely, "[a]ny less than a complete transfer of these rights is merely a license, in which case the title remains with the owner of the patent and the suit must be brought in its name." ***Enzo APA & Son, Inc.***, 134 F.3d at 1093.

Yet "[e]ven if the patentee does not transfer formal legal title, the patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee." ***Propat International Corp.***, 473 F.3d at 1189. Under this "limited exception," the transfer creates "an exclusive license, rendering the

licensee the virtual assignee." *Id.*  A party who does not have "all substantial rights" in the patent does not have standing to sue for patent infringement in its own name. *Textile Products, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir.), *cert. denied*, 119 S.Ct. 73 (1998).

Because the transfer of "all substantial rights" must be tantamount to a virtual assignment, the licensing arrangement "must, logically, resemble an assignment in both form and substance." *Enzo APA & Son, Inc.*, 134 F.3d at 1093.  Of tantamount importance to that determination is the question of exclusivity *vel non*:

> Because patent rights are rights to exclude others, a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that others shall be excluded from practicing the invention within the field covered by the license.  Put another way, an exclusive license is a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave.

*Textile Products, Inc.*, 134 F.3d at 1484 (citations and internal quotation marks omitted).  Here**,** in analyzing whether all substantial rights have been transferred, the court must examine the operative agreement by which plaintiff claims the right to sue to enforce the '835 patent and "analyze the respective rights allocated to each party under that agreement." *Propat International Corp.*, 473 F.3d at 1189.  The ultimate goal is to ascertain "the intent of the parties to the license as manifested by the terms of their agreement and . . . the substance of the grant," *Textile Products, Inc.*, 134 F.3d at 1484.  *See also AsymmetRx, Inc. v. Biocare Medical, LLC*, 582 F.3d 1314, 1319 (Fed. Cir. 2009) (court must "examine whether the agreement transferred all substantial rights to the patents and whether the surrounding circumstances indicated an intent to do so") (citation and internal quotation marks omitted).

With these principles in mind, I examine the particulars of the License Agreement between plaintiff and Ryujin.  Relevant to my determination are "a litany of factors,"

> including the retention [by the patent owner] of:  control over the assignee's ability to further assign the patent; an economic interest in the patent; the right to make, use, or sell products under the patent; responsibility for patent maintenance; the right to terminate the agreement; and perhaps most importantly, control over the assignee's enforcement activities.

*Diamond Coating Technologies, LLC v. Hyundai Motor America*, 2015 WL 2088892 at *4 (C.D. Cal. April 1, 2015), *appeal docketed* (No. 15-1844) (Fed. Cir. July 16, 2015), *and appeal docketed* (No. 15-1861) (Fed. Cir. July 27, 2015).  Defendants point to five specific features of the License Agreement which they claim show plaintiff lacks sufficiently substantial rights in the '835 patent to create an exclusive license which would entitle it to bring suit on the patent in its own name.  I concur and therefore grant the motions.

The agreement characterizes itself as an exclusive license and states that it grants "all substantial rights" in the '835 patent to plaintiff, including both the rights to "make, have made, use, import, export, offer to sell, or sell products or services covered by" the patent, to grant sublicenses, and to sue for infringement.  (*See* **License Agreement** ¶ 2.1.)  Of course, the mere labeling of a license as "exclusive" bears little weight in the court's analysis.  *See Textile Products, Inc.*, 134 F.3d at 1484.  Thus, I must delve further into the substance of the License Agreement to determine whether it bears out the promise of its expansive introductory paragraph.

Defendants begin by pointing out that although plaintiff ostensibly holds the exclusive right to sue to enforce the patent, Ryujin retains an interest in 94 per cent of the proceeds of any net recovery obtained from litigation.  (**License Agreement** 1 ¶

3.3.)  Defendants insist that the retention of such a significant proportion of any recovery in these (and any other) lawsuits demonstrates that Ryujin remains the true owner of the patent and has delegated to plaintiff merely  "the duty to provide licensing and enforcement services."  *Propat International Corp.*, 473 F.3d at 1191.  Relying on *Rude v. Westcott*, 130 U.S. 152, 9 S.Ct. 463, 467, 32 L.Ed. 888 (1889), and *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870 (Fed. Cir. 1991), plaintiff counters that Ryujin's right to receive infringement damages is merely a means of compensation under the agreement not inconsistent with an assignment.  *Rude*, 9 S.Ct. at 467; *Vaupel*, 944 F.2d at 875.

This argument is correct, *pro tanto*, but woefully incomplete.  While the patent owner's retention of a share of the proceeds certainly is not dispositive of the court's inquiry, it plainly is not (as plaintiff suggests) "irrelevant."  As the Federal Circuit has explained, citing specifically to both *Rude* and *Vaupel*:

> To be sure, the fact that a patent owner has retained a right to a portion of the proceeds of the commercial exploitation of the patent, as [the patent owner] has done in this case, does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent. [Citations omitted.] Nonetheless, the fact that [the patent owner] retains a substantial share of the proceeds is consistent with [the patent owner's] retaining ownership rights in the patent, while allocating to [the licensee] the duty to provide licensing and enforcement services.

*Propat International Corp.*, 473 F.3d at 1191.  Moreover, in *Rude* and *Vaupel*, the apposite assignments found sufficient to confer standing retained in the patent owners a "one-fourth" and five percent share of net proceeds, respectively.  *See Rude*, 9 S.Ct. at 467; *Vaupel*, 944 F.2d at 875.  Where the patent owner has retained a larger portion of

any recovery on the patent, courts instead have found this factor to be either neutral,

*see Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*,

248 F.3d 1333, 1342, 1344 n.11 (Fed. Cir.) (50% of profits), *cert. denied*, 122 S.Ct. 216

(2001), or to bear significantly more (although still not conclusive) weight, *see Diamond*

*Coating Technologies, LLC*, 2015 WL 2088892 at *5 (50% of profits); *VirnetX, Inc. v.*

*Microsoft Corp.*, 2008 WL 8894682 at *4-5 (E.D. Tex. June 4, 2008) (35% of profits).

Thus, the retention of such a substantial portion of any litigation recovery – far greater in

this case than in any other the court has found – certainly is one consideration that may

demonstrate a lack of standing if other relevant considerations show the licensee

"lack[ed] important indicia of a true ownership interest in the patent." *Propat*

*International Corp.*, 473 F.3d at 1194.

One of these factors is a licensee's inability to assign the patent without the

licensor's consent. *See id.* Just such a condition is found in the License Agreement

between plaintiff and Ryujin, which provides that none of the "rights, interests or

obligations under this Agreement shall be assigned or transferred, in whole or in part

. . . by a Party without the prior written consent of the other party," absent which the

attempted assignment "is null and void." (**License Agreement ¶¶** 7.3 & 7.4.)  The

License Agreement also places conditions on the right to withhold consent under these

paragraphs. *Propat International Corp.*, 473 F.3d at 1194 (patent owner could

withhold consent for any reason).  "The right to dispose of an asset is an important

incident of ownership, and such a restriction on that right is a strong indicator that the

agreement does not grant [plaintiff] all substantial rights under the patent." *Id.* at 1191.

8

Such restrictions thus often are "fatal" to a plaintiff's assertion of independent standing. *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005). *See also Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F. Supp. 1352, 1373 (D. Del. 1993) (in light of failure to transfer unfettered right to assign, court "need look no further in determining that [patent owner] reserved substantial rights under the Agreement"); *Calgon Corp. v. Nalco Chemical Co.*, 726 F. Supp. 983, 986 (D. Del. 1989) ("Just as the right to alienate personal property is an essential incident of ownership, the right to further assign patent rights is implicit in any true assignment.").

Plaintiff responds that it will come into a full, unencumbered right to assign the '835 patent once it has paid off the promissory note which secures the License Agreement.  (*See* **License Agreement** ¶ 3.3.4.)  Tellingly, however, plaintiff (the party with the burden of proof on this issue) has failed to append a copy of said note to its response, and indeed, apparently refused to produce a copy of the note to defendants unless they agreed *not* to file it with the court.  Defendants' uncontroverted, verified statements regarding the terms of the note, however, establish that payment thereon is not due until 2023, at which time plaintiff must pay Ryujin $50 million in order to discharge the note and gain full rights to assign.  In the meantime, plaintiff retains the right to terminate the License Agreement if it determines, "in its sole judgment, that licensing or enforcement of the ['835 patent] is not commercially reasonable or practicable" (**License Agreement** ¶ 6.2), and Ryujin must accept any such decision as payment in full of the note.  Thus, plaintiff's purported future right to assign without restriction is wholly and remotely contingent on a set of circumstances that strikes this

9

court as improbable at best, and wholly illusory at worst.

Moreover, and despite plaintiff's purportedly unfettered right to enforce the '835 patent,[5] the License Agreement nevertheless designates five specific entities (as well as their unidentified "affiliates") against whom plaintiff may not file suit or otherwise seek to enforce the patent without Ryujin's consent.  (**License Agreement** ¶ 5.2.)  The patent owner's retention of an absolute right to veto a licensee's enforcement decision is inconsistent with a conclusion that the licensee has been granted all substantial rights thereunder.  ***See Propat International***, 473 F.3d at 1191 ("[The]  right to veto licensing and litigation decisions also constitutes a significant restriction on [the licensee's] interest in the patent. . . . indicat[ing] that [the patent owner] retains substantial ongoing control of the sort typically associated with the retention of an ownership interest in the patent."); ***Prima Tek II, L.L.C. v. A-Roo Co.***, 222 F.3d 1372, 1379–80 (Fed. Cir. 2000) ("In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention[.]")

---

[5]  Plaintiff insists that its right to bring suit on the '835 patent carries significant weight.  Yet restrictions such as those contained in the License Agreement and discussed herein demonstrate that plaintiff's discretion in that regard is significantly circumscribed.  In such circumstances,

> [i]t has long been held that a "right to sue" clause in a contract, unaccompanied by the transfer of other incidents of ownership, does not constitute an assignment of the patent rights that entitles the transferee to sue in its own name.  That principle sensibly reflects that a patent owner may give another responsibility to select targets for suit – a power of attorney, in effect – without surrendering ownership of the patent.

***Propat International Corp.***, 473 F.3d at 1192 (internal citations omitted).

(emphasis in original).[6]

Plaintiff counters that two of the five specified entities against which it may not enforce the patent were prior assignees of the '835 patent and simply "retain[] a right to practice the patent they once owned."  (**Plf. Resp. Br.** at 11.)  Plaintiff's implicit suggestion that the retention of such rights in prior assignees is not inconsistent with the alleged exclusivity of its present right to enforce the '835 patent is not at all self-evident. In fact, the maintenance of such pre-existing licenses weighs against a finding of exclusivity of plaintiff's license.  *See Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995).  *Cf. Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000) (finding exclusive licensee had standing and distinguishing *Abbott Laboratories* on ground, *inter alia*, that "license grant was not subject to any prior-granted licenses").[7]

In addition to this *de facto* veto power over plaintiff's enforcement decisions, Ryujin also retains its own "worldwide right and license to make, have made, use sell, offer to sell, import, [and] export products or services covered by" the '835 patent.

---

[6] Plaintiff's reliance on *WiAV Solutions, LLC v. Motorola Corp.*, 631 F.3d 1257 (Fed. Cir. 2010), is misplaced.  In addressing the issue whether the plaintiff there had suffered sufficient injury-in-fact to confer *constitutional* standing, the court noted that a license could be exclusive as to some discrete aspect of the patent, such that the existence of other licenses covering other aspects of the patent did not defeat the plaintiff's standing as to cases in its area of exclusivity.  *Id.* at 1266-67.  That inquiry is distinct from the issues  joined by defendants' motions in this case, which raise separate concerns of *prudential* standing that may be fatal even where a party has constitutional standing.  *See Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1031 (Fed. Cir.) (although "[p]ractice of the invention by others may indeed cause [the licensee] pecuniary loss . . . economic injury alone does not provide standing to sue under the patent statute") (internal citations omitted), *cert. denied*, 116 S.Ct. 274 (1995).

[7] Here again, plaintiff's citation to *WiAV Solutions LLC* is inapposite.  As noted above (*see supra* n.6), the licensee in *WiAV* held an exclusive right to practice the patent in a specific, narrow field. 731 F.3d at 1261-62.  The facts here are not similar, as plaintiff does not claim a right to enforce the patent in only a narrow range of applications.

(**License Agreement** ¶ 2.3.)[8]  Plaintiff's argument that Ryujin does not presently make or sell products covered by the patent and has no intent to do so in the future – aside from being substantiated by nothing more than rank hearsay – is simply irrelevant.  ***See Sicom Systems, Ltd. v. Agilent Technologies, Inc.***, 427 F.3d 971, 979 (Fed. Cir. 2005) (finding "unpersuasive" licensee's arguments that "court should not consider risks that are outside the scope of the facts in this case;" appropriate focus is on intention of parties and the substance of the grant).[9]  "[T]he licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights."  ***Fieldturf, Inc. v. Southwest Recreational Industries, Inc.***, 357 F.3d 1266, 1269 (Fed. Cir. 2004).  ***See also Abbott Laboratories***, 47 F.3d at 1132. ***Cf. Speedplay, Inc.***., 211 F.3d at 1251 (licensee had standing where "the license grant was not subject to any prior-granted licenses or to any retained rights by the licensor to practice the patent").

Finally, defendants note that, while plaintiff has the obligation to maintain the patent (***see* License Agreement** ¶¶ 3.5, 5.8), it does not have the right to abandon it without Ryujin's consent (***id.*** ¶ 5.8).  To be sure, "[t]he responsibility to maintain a patent is one of the obligations that has been recognized . . . as an indication that the party with that obligation has retained an ownership interest in the patent."  ***Propat***

---

[8]  Relatedly, plaintiff makes much of the fact that, unlike the plaintiff in ***Propat International Corp.***, it has the right to practice the '835 patent.  While this is true, this consideration hardly could be characterized as central to the court's decision in ***Propat***.  Moreover, that the licensee has a right to make, use, and sell the invention has not prevented the Federal Circuit from deciding, based on factors such as those discussed herein, that a putatively exclusive licensee lacked standing to bring suit on the patent on its own.  ***See, e.g., Intellectual Property Development, Inc.***, 248 F.3d at 1344.

[9]  In addition, even on its own merits, this statement fails to account for Ryjuni's retention of the additional rights to "have made" by third parties products covered by the '835 patent.

*International*, 473 F.3d at 1191.  Part of the obligation to maintain the patent is responsibility to pay periodic maintenance fees to the United States Patent and Trademark Office.   (*See* Stephanie Dube Dwilson, Small Business, ***How To Know if Patents are Abandoned*** (available at

http://smallbusiness.chron.com/patents-abandoned-65186.html) (last accessed March 15, 2016).  A patent owner rationally may decide to let these payments lapse if, for example, the patent has not proved profitable.  (***See id.***)  Plaintiff, however, does not have that right absent Ryujin's consent.  Because "[t]he right to dispose of an asset is an important incident of ownership," this encumbrance on plaintiff's right to abandon the '835 patent "is a strong indicator that the agreement does not grant [the licensee] all substantial rights under the patent."  ***Propat International***, 473 F.3d at 1991.

On balance, therefore, I find and conclude that the License Agreement does not transfer to plaintiff all substantial rights in the patent and plaintiff therefore lacks standing to sue on the patent.  Plaintiff insists the defect may be cured by allowing it to move to join Ryujin as a co-plaintiff.  ***See  Rite-Hite Corp***., 56 F.3d at 1552 (plaintiff with exclusive license that nonetheless transfers fewer than all substantial rights has standing if co-owner joined).  As the preceding analysis makes manifest, however, such course of action would be futile in this case.  Where, as here, a party "has not received an express or implied promise of exclusivity under the patent, *i.e.*, the right to exclude others from making, using, or selling the patented invention, the party has a 'bare license,' and has received only the patentee's promise that [the] party will not be sued for infringement."  ***Id.*** (internal citations omitted).  The parties' designation to the

contrary notwithstanding, plaintiff clearly does not have an exclusive license.  At least two other companies, as well as Ryujin itself, have the right to practice the '835 patent.  Thus, plaintiff does not have standing to sue regardless whether Ryujin is joined as a plaintiff.  *See Propat International*, 473 F.3d at 1193-94; *Sicom Systems, Ltd.*, 427 F.3d at 976.

For these reasons, plaintiff is without standing to bring its claims for patent infringement, and concomitantly the court lacks subject matter jurisdiction over these consolidated cases.  The motions to dismiss therefore must be granted.  Moreover, because the joinder of Ryujin, even if feasible, would not cure the jurisdictional defect, plaintiff's claims must be dismissed with prejudice.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That with the consent of the magistrate judge, the prior order of reference [#34], filed August 12, 2015, is withdrawn;

2.  That  **Defendant Asus Computer International and Asustek Computer, Inc.'s Motion To Dismiss for Lack of Standing** [#32], filed August 11, 2015, is granted;

3.  That **Defendant Dell Inc.'s Motion To Dismiss for Lack of Standing** [#31], filed July 31, 2015, is granted;

4.  That plaintiff's claims for relief and causes of action against each and all defendants in these consolidated cases are dismissed with prejudice;

14

5.  That judgment with prejudice shall enter on behalf of defendants, ASUS Computer International; ASUSTek Computer, Inc.; Hewlett-Packard Company; and Dell Inc., and against plaintiff, KW-2, LLC, on all claims for relief and causes of action asserted herein; and

6.  That defendants are awarded their costs, to be taxed by the clerk of the court in the time and manner provided under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated March 15, 2016, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge